COURT OF APPEALS, JUNE TERM, 1820.

BARNEY *vs*. THE MARYLAND INSURANCE COMPANY.

APPEAL from *Baltimore* county court. Covenant on a policy of insurance, dated the 29th of September 1809, was brought by the appellant against the appellees. The declaration contained two counts: The *first count* recited the policy of insurance, and that the plaintiff paid to the defendants the sum of $1200, the amount of the premium for the insurance of the schooner *Hawk*, her tackle, &c. That she was an *American* vessel, regularly documented as such, and so continued till the loss, &c. That she was tight, &c. and belonged to the plaintiff, and was of the value of $8000, and upwards. That the plaintiff had performed, &c. and that on the 29th of September 1809, said schooner was in safety at *Baltimore*, bound to *St. Sebastians*, and sailed in like safety on the voyage insured. That afterwards on the 11th of January 1810, whilst on the high seas, and in the lawful and regular prosecution of said voyage, she was captured and carried away by a number of armed men on board certain vessels to the plaintiff unknown, whereby she became totally and wholly lost to the plaintiff, of which the defendants, on the 18th of April 1810, had notice, &c. The *second count* stated, that on her said voyage from *Baltimore* to *St. Sebastians*, she was, by the danger of the seas and the violence of the wind, &c. bulged, &c. and thereby totally lost to the plaintiff, &c. *Non infregit* was pleaded, and issued joined.

Much evidence was given by the plaintiff (which it is unnecessary to state here, as it is fully set forth in the opinion of the court,) and the court below (*Bland*, A. J.) was of opinion, and so instructed the jury, that it was not sufficient to entitle the plaintiff to recover. To this opinion he excepted; and the verdict and judgment being against him, he prosecuted the present appeal. The cause was first argued in this court at June term 1817, before CHASE, Ch. J. BUCHANAN, EARLE, JOHNSON, MARTIN and DORSEY, J. by *Harper*, for the appellant, and by *Winder*, for the appellees, and continued, under a *curia advisare vult*, until this term, when, at the instance of the court, it

Barney
vs
Insurance Co'y.

The words of a warranty in a policy of insurance "not to abandon, in case of capture, until condemned," are to be construed according to their ordinary sense, and must be understood to mean a capture *jure belli*, and a judicial condemnation on such capture by a prize court of competent jurisdiction.

If a policy contains the warranty above mentioned, and the vessel insured be captured and retained in the service of the government to which the captor belongs, without being condemned by a prize court of competent jurisdiction, the insured has no right to abandon.

The seizure and appropriation of an insured vessel by a foreign government, without the sentence of a court of competent jurisdiction, does not divest the owner (though insured,) of his right of property; and, so long as the vessel exist, he cannot recover, as for a total loss, without abandoning.

Whenever there is *spes recuperandi*, the insured must abandon to entitle himself to demand of the insurers as for a total loss.

The words in a policy "insured against all risks except seizure in port," must be understood to mean any arbitrary seizure.

Though the plaintiff declares as for a total loss, he may, if the evidence will justify it, recover as for a partial loss.

In an insurance on a vessel, no loss incurred by reason of wages, provisions or demurrage, during her detention in port, can be recovered.

When there is a loss by *capture*, the insured cannot recover as for a partial loss on a policy insuring against capture, without giving other evidence than the *spes recuperandi*—A different rule would lead to fraud and injustice on the underwriters.

was again argued before BUCHANAN, EARLE, JOHNSON and DORSEY, J.

*Harper*, and *Williams* (assistant attorney general,) for the appellant, cited *Yeaton vs. Fry*, 5 *Cranch*, 341. *Marsh. Ins.* 248, 249, ch. 8, s. 1. *The Starr.* 3 *Wheat.* 100 (note.) *Schooner Exchange vs. M'Faddon, and others,* 7 *Cranch*, 116, 146. *Marsh. Ins.* 479, 509, 10, 15, 16; and *Mitchell vs. Edie*, 1 *T. R.* 608.

*Pinkney* and *Winder*, for the appellees, cited *Black vs. Marine Insurance Company*, 11 *Johns. Rep.* 287. *Tucker vs. Juhel and DeLonquarmare*, 1 *Johns. Rep.* 20. *Unwin vs. Wolseley*, 1 *T. R.* 678, *Park*, 84; and *Marsh. Ins.* 248 to 251, 422, 479, 481, 495, and 509.

BUCHANAN, J. delivered the opinion of the court. The proof, as set out in the bill of exceptions, is substantially this—That on the 29th of September 1809, the schooner *Hawk*, the property of the plaintiff, was insured by *The Maryland Insurance Company*, at and from *Baltimore* to *St. Sebastians;* that she sailed on the 16th of October of the same year, and was captured on the 11th of January 1810, by certain *French* armed vessels, and carried into *Bermia*, a port in *Spain*, then in the possession of the *French* government; that she was taken from thence by the captors to *St. Sebastians*, and afterwards, on the 19th of April 1810, to *Bayonne* in *France*, and there detained by them until the 9th of January 1811, when she was ultimately taken into the service of the *French* government, by order of the minister of marine, as a public armed ship, and has never been restored. That on the 10th of October 1809, the policy of insurance was assigned by the plaintiff to *Falls* and *Brown*, of which the defendants had notice; and that on the 18th of April 1810, they addressed a letter to the defendants, advising them of the capture and detention of the vessel at *Bermia*, and offering to abandon. That on the 24th of April the defendants acknowledged the receipt of the letter of *Falls* and *Brown* of the 18th of April, but declined to accept the abandonment. That on the 13th of November 1810, *Stewart Brown*, the agent of *Falls* and *Brown*, wrote again to the defendants, informing them that the cargo had been sold at *Bayonne* on the 9th of August 1810, and the proceeds paid

over to the *French* government; that the schooner remain-ed in the possession of the captors, out of the control of the assured, and had been so from the time of the capture, and insisting on payment for a total loss. That on the 6th of December 1810, he addressed another letter to them, alleging that the vessel had been abandoned to them on the 13th of November, and claiming payment for the loss; and that on the 12th of February 1811, he wrote a fourth letter to them to the same effect. The policy of insurance is in the common form, with an exception of "seisure in port" from the risks insured against, and a warranty or stipulation on the part of the assured "not to abandon in case of capture until condemned." On this policy the suit was brought. The declaration has two counts, the *first* for a total loss by capture at sea, and the *second* for a total loss by the dangers of the sea. No part of the testimony having any application to the *second* count, the case turns upon the *first*, to which the opinion expressed by the court below is exclusively confined.

June 1820.

Barney
vs
Insurance Co'y

There are two questions arising in the cause—1. Whether, admitting the facts as stated to be true, the plaintiff is entitled to recover as for a total loss? 2. If he is not entitled to recover as for a total loss, whether he can recover as for a partial loss? They will be considered in the order in which they are presented. The warranty or stipulation in the policy, "not to abandon in case of capture until condemned," is to be construed according to the ordinary sense of the terms used; and so understood, must be taken to mean a capture *jure belli*, and a judicial condemnation in a prize court of competent jurisdiction. The intention of the parties was, that in the event of the vessel being captured, the insurers should not be made answerable by abandonment as for a total loss, unless the capture should be followed up by a regular sentence of condemnation. By the word "condemned," connected as it is with the words "in case of capture," a condemnation on proceedings founded on the capture is intended, which could only be in a court of prize, and it cannot be strained to mean any thing else. But if any thing was necessary to explain the sense in which the terms were intended to be used, it might be found in the further stipulation by the plaintiff "to do all in his power, in case of capture, for the defence of the property, and if condemned to enter an appeal;"

June 1820. that is, to defend the property in proceedings founded on the capture, and to appeal from any judicial sentence of condemnation on those proceedings, as in no other case could there be an appeal. Here the *Hawk* was captured by *French* armed vessels, and after being a long time detained by the captors was, without any judicial proceedings being had against her, taken into the service of the *French* government by order of the minister of marine, which clearly was not a condemnation within the terms of the policy, but an arbitrary measure—an act done under some municipal regulation of *France*, not known to the law of nations. The plaintiff, therefore, had no right to abandon, and the case stands as if there had been no abandonment, or offer to abandon; which makes it unnecessary to inquire, whether the abandonment relied on was well made and in proper time or not? But it is said that the stipulation by the plaintiff, not to abandon, could not operate to prevent his recovering as for a total loss, in any case in which abandonment would not be necessary, as where nothing remained to be abandoned, and that this is such a case. That admitting the order of the minister of marine not to be a condemnation within the terms of the policy, yet that the taking the vessel into the service of the *French* government, placed her so entirely without the control of the plaintiff, as to be equivalent to a final sentence of condemnation; and that therefore it was not necessary to abandon. But there is a mistake in the supposed legal effect of the order of the minister of marine: It did not divest the plaintiff of his right of property; the vessel was not destroyed, but specifically remained, and the *spes recuperandi*, however remote and weak, was not extinguished. If, therefore, nothing else had stood in his way, the plaintiff could not have claimed as for a total loss without abandoning; for as it is settled, that the assured can never recover for any greater injury than he has sustained, he must, before he can go as for a total loss, renounce to the insurer all his right and title to whatever may be saved; leaving to him the *spes recuperandi*, that he may have the benefit of a recapture, or any other accident by which the thing may be recovered; and thus justice is done to both— to the insured, by giving him an indemnity for all the loss he has sustained; and to the insurer, by putting him in the place of the insured, in case any thing should ever be re-

covered. The insured has his election to abandon or not,

and until he has made that election, no right can vest in him as for a total loss. The rule is a good one, it has its foundation in justice, and ought never to be shaken. Besides, the exception in the policy as to seizure in port obviously points to something not within the ordinary risks, the danger of which the plaintiff was willing to take upon himself. The words of the exception are, "insured against all risks except seizure in port," and must be understood to mean any arbitrary measure not foreseen by the parties, but which it was apprehended might grow out of the then disturbed and extraordinary state of things in *Europe,* and which the defendants were not willing to become answerable for. The order of the minister of marine was an arbitrary and unforeseen measure; and the taking the *Hawk* into the service of the *French* government may be considered as an act separate and distinct from the capture, and as a seizure within the exception, certainly within the letter of it. This may be thought a hard case on the part of the plaintiff, but it is his contract, and the defendants have a right to stand upon it. The language of his warranty, or stipulation, call it which you will, is very comprehensive, and we must construe it according to the ordinary meaning of the terms used, and are not left to guess at what might possibly have been his intention; and when we think we have discovered it, to give it effect contrary to the natural import of his words. He has undertaken not to abandon in any case of capture until there should be a judicial sentence of condemnation, and has thus virtually engaged, in case of capture, if any thing should happen to prevent a condemnation, not to turn it into a total loss by abandonment. There has been no such sentence, and to give effect to the abandonment set up, admitting it to have been made after the vessel was taken into the service of *France,* would be to enable him to recover by means of a violation of his contract.

With respect to the second question; though the plaintiff has declared as for a total loss, there is no doubt that he might recover as for a partial loss, if there was any thing in the record to support such a claim. The insurance is on the vessel, and it seems to be settled, that in such case there can be no recovery for loss incurred on account of wages, provisions or demurrage, during the detention of the

ship; and if it was not so, there is in this case an express renunciation in the memorandum on the policy "of all claims against the company for demurrage, seamen's wages or provisions," and it does not appear that any damage was done to the vessel, tackle or furniture.

But it is contended, that the vessel being taken into the service of the *French* government, and nothing but the right of property remaining, the sum insured, after deducting the value of the *spes recuperandi*, to be ascertained by the jury, is the loss actually sustained, and the amount for which the plaintiff ought to recover. Here again we are met by the exception in the policy of seizure in port. But if it should be admitted, that the taking the vessel into the service of the government of *France*, under the order of the minister of marine, does not fall within the exception, and is to be considered as a loss by capture, yet the *spes recuperandi* cannot be resorted to as a criterion by which to ascertain, without any other evidence, the amount of the loss sustained. It would be to put insurers too much at the mercy of the insured, and might often work great injustice, by holding out to the insured a temptation to fraud, whose interest it would always be to sink the value of the *spes recuperandi* as low as possible. Juries, having no knowledge of the course and manner of proceeding in foreign courts, would seldom attach to it more than a nominal value, and the insured would in almost every case, in the name of a partial loss, substantially recover as for a total loss, with the advantage of all the chances of afterwards regaining the property itself. There would be no safeguard for insurers against fraud and imposition, whilst the assured, having a full knowledge of the situation of the vessel, and every thing relating to her, with the right to abandon or not at his election, would always be secure—abandoning in desperate cases, and claiming as for a total loss, and in others, retaining the right of property, and after recovering in the name of a partial loss, substantially the value of the property, turning round and recovering the possession of the thing itself, which ought of right to go to the insurer. The adoption of such a rule would go to defeat the very object of abandonment, which, with the great uncertainty that would always attend such a mode of coming at the amount of the loss sustained, is a sufficient objection to it.

In no view, therefore, of the subject, is the plaintiff entitled to recover either as for a total or a partial loss, and the direction to the jury by the judge, before whom the cause was tried, is right.

CHASE, Ch. J. *(a)*. This is an action on a policy of insurance, entered into by the defendants to the plaintiff on the 29th of September 1809, for the insurance of the schooner *Hawk*, her tackle, &c. from *Baltimore* to *St. Sebastians*. The *first* count in the declaration is for a total loss by capture on the high seas by persons unknown. On this count the question arises; and the decision of the court must depend on the construction of the stipulation contained in the policy, whereby the assured warrants not to abandon before condemnation. ' Independent of this clause in the policy, the right to abandon might be exercised at the discretion of the assured; and from the improper or premature exercise of this right, great inconvenience had been experienced by the underwriters, and losses sustained. To restrict the general exercise of this right, and to oblige the assured, after capture, to use their best endeavours, and all lawful ways and means in their power, to prevent a condemnation, this stipulation, by way of warranty, was inserted. Unless the court construe this stipulation as a condition precedent, which must be strictly complied with, the underwriters can derive no benefit or advantage from it. If such exposition is given to it by the court, and the abandonment is made prior to condemnation, the warranty is violated, the policy is avoided, and the plaintiff's right of action defeated, which, in my opinion, is the very effect and operation contemplated and intended by the parties, to insure a strict compliance with the stipulation inserted in the policy.

Without going into a minute detail of all the facts and circumstances stated in the bill of exceptions, I will content myself with referring to those material facts which relate to the question in this case. *(He here stated the material facts.)* On the admission that the condemnation would relate back to the time of the capture, and in that way to justify and give validity to the abandonment as

*(a)* This opinion of the Chief Judge was prepared by him after the first argument of the cause; owing to indisposition he did not attend at the last argument, or when the opinion of the court was delivered.

Barney
vs
Insurance Co'y

contended for; yet, as in the opinion of the court, there is no proof in this cause of any judicial or regular condemnation by a court of competent jurisdiction, to decide on the question of prize or no prize, in which opinion I understand all the members of the court to concur, it is unnecessary to give any opinion on the legal consequences derivable from such condemnation.

As to the recovery for a partial loss: It appears to me that there is no proof in this case to warrant such recovery, on the supposition that in a case so circumstanced as this such recovery could be obtained. It is not proved that the vessel was restored, or that any compensation was made for the use and detention of her; but on the contrary, there is negative proof that the vessel was retained by the *French* government. In *De Hahn vs. Hartley*, 1 *T. R.* 343, which is a ruling decision, the law is established, that a warranty in a policy of insurance is a condition or a contingency, and unless that is performed there is no contract; and that it is perfectly immaterial for what purpose a warranty is introduced, but being inserted, must be strictly and literally complied with. In *Woolmer vs. Muilman*, 3 *Burr.* 1419, 1420, the ship and property were warranted neutral. It was stated that the ship, at the time, and before she was lost, was not neutral—adjudged to be no contract, because the property was not neutral; and judgment for the defendant.

In my opinion a violation of the warranty has been plainly and unequivocally proved by the abandonment at the time proved, and that the plaintiff cannot recover on the facts stated in the bill of exceptions; and I think the judgment of the court below ought to be affirmed.

JUDGMENT AFFIRMED.